## SOUTHERN SURETY CO. v. AUSTIN, Banking Com'r. (No. 1072—5214.)

Commission of Appeals of Texas, Section B. May 29, 1929.

P. H. Swearingen, of San Antonio, John T. Suggs, of Denison, and John T. Suggs, Jr., of Dallas, and George E. Shelley, of Austin, for plaintiff in error.

Spencer, Rogers & Lewis, of San Antonio, for defendant in error.

Birkhead, Lang & Beckmann, of San Antonio, and Chas. L. Black, of Austin, as amici curiæ.

LEDDY, J. Defendant in error sued the plaintiff in error on a surety bond for loss sustained by the First Guaranty State Bank of Era, Tex., through Richard Ready, in connection with the discharge of his duties as cashier.

Plaintiff in error pleaded that any liability against it was that of a surety for Ready as principal; that long prior to the filing of the suit, having been advised of the claim under the bond, it gave notice in writing to the defendant in error, under the provisions of articles 6244 and 6245, Rev. St. 1925, demanding that suit be brought on said claim; that defendant in error failed and refused to sue after the receipt of said notice, either to the first or second terms of the courts having jurisdiction of said claim.

Defendant in error was awarded a judgment by the trial court in the sum of $4,904.60, which was affirmed by the Court of Civil Appeals, 2 S.W.(2d) 1000.

The only question presented for our determination is the correctness of the following conclusion of law by the trial court, viz.:

"I conclude further that the obligation of the defendant, Southern Surety Company, as expressed by the contract, is the direct and primary undertaking of said Surety Company and is a contract of insurance and that the so-called principal is not a necessary party to said suit and that the Bank in the hands of the Commissioner of Banking was under no legal duty to the defendant, Southern Surety Company, to bring this suit in accordance with the notice set forth above, Article 6244 having reference to contracts of suretyship and to obligations secondary in character and having no reference to direct and primary obligations on insurance contracts, insuring the fidelity of officers and employees of banks. I further conclude that the failure to bring such suit did not discharge the defendant, Southern Surety Company."

Plaintiff in error strenuously insists that its contract is one of suretyship, and that the failure to comply with its demand to sue, as required by article 6244, R. S. 1925, operated to discharge it from any liability, while defendant in error contends that the terms of the bond show conclusively that plaintiff in error is not a surety, as that term is used in the statute, but that the contract is one of insurance, wherein the fidelity of the cashier of said bank was guaranteed.

It is recited in the bond that Ready, as principal, and the surety company, as surety, obligated themselves to hold the bank "harmless against, and pay to it such pecuniary loss as it may sustain of money or other valuable securities embezzled, wrongly abstracted, or willfully misapplied by said officer in the course of his employment as such."

Following this obligation, the bond contains six numbered paragraphs. The first contains the following provision: "It being the true intent and meaning of this bond that the company shall be responsible for any loss occasioned by or resulting from any act as aforesaid, occurring within the period provided in this bond, which is from noon August 1, 1922, to noon of August 1, 1923."

The next paragraph provides for the termination of the responsibility of the surety after the expiration of 30 days from giving of written notice to the bank and commissioner of banking of its desire to be released.

The third and fourth paragraphs make provision for the giving of notice by the bank and commissioner of banking to the surety company of any loss claimed under the bond and the furnishing of proof thereof.

The fifth paragraph is an attempt to require suit to be brought for the recovery of any claim asserted under the bond and for process to be served upon the surety company within two years after knowledge thereof by the bank or Commissioner. This clause contains no provision requiring service of process to be had within the time stipulated upon the principal in the bond.

The bond also contained the further provision: "And the officer doth hereby for himself, his heirs, executors and administrators, covenant and agree to and with the company that he will save, defend and keep harmless the Company from and against all loss and damage of whatever nature or kind and from all legal and other costs and expense, direct or incidental, which the company shall or may at any time sustain or be put to (*whether be-*

*fore or after any legal proceedings by or against it to recover under this bond, and without notice to him therefor)* or for or by reason or in consequence of the company having entered into the present bond."

■ In determining whether a contract is one of suretyship or insurance, courts will consider the substance, rather than the form, of the contract. The fundamental nature of the contract cannot be changed by the names by which the parties may designate themselves. Mahana v. Alexander (Cal. App.) 263 P. 260; Champion Ice Mfg., etc., Co. v. American Bonding & Trust Co., 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356.

■ The decisions in both state and federal courts are uniform in holding that a bond issued by a surety company of the nature here involved guaranteeing the fidelity and honesty of an employee is not a contract of suretyship, but one of insurance. 1 Cooley's Briefs on Insurance, pp. 16 and 17; 2 May on Insurance, § 540, p. 1268; American Indemnity Co. v. Munn Co. (Tex. Civ. App.) 278 S. W. 956 (writ refused); Southern Surety Co. v. Citizens' State Bank (Tex. Civ. App.) 212 S. W. 556; American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; Guaranty Co. v. Mechanics & Savings Bank & Trust Co. (C. C. A.) 80 F. 766; Tebbetts v. Mercantile Credit Guarantee Co. (C. C. A.) 73 F. 95; First Nat. Bank of East Islip v. National Surety Co., 228 N. Y. 469, 127 N. E. 479; Hormel & Co. v. American Bonding Co., 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.) 513, and note; American Bonding & Trust Co. of Baltimore City v. Milwaukee Harvester Co., 91 Md. 733, 48 A. 72; United American Fire Ins. Co. v. American Bonding Co., 146 Wis. 573, 131 N. W. 994, 40 L. R. A. (N. S.) 661; People v. Fidelity & Casualty Co., 153 Ill. 25, 38 N. E. 752, 26 L. R. A. 295; Bank of Tarboro v. Fidelity & Deposit Co., 126 N. C. 320, 35 S. E. 588, 83 Am. St. Rep. 682; note to Fidelity, etc., Co. v. Gate City National Bank, 54 Am. St. Rep. 446; People v. Rose, 174 Ill. 310, 51 N. E. 246, 44 L. R. A. 124; Van Buren County v. American Surety Co., 137 Iowa, 490, 115 N. W. 24, 126 Am. St. Rep. 290; Standard Brewery v. Mass. Bonding Ins. Co., 73 Ind. App. 422, 127 N. E. 624; W. A. Thomas Co. v. Nat. Surety Co., 142 Minn. 460, 172 N. W. 697; Nat. Surety Co. v. Commonwealth, 125 Va. 223, 99 S. E. 657 (certiorari denied, 250 U. S. 665, 40 S. Ct. 13, 63 L. Ed. 1197); Green v. U. S. Fidelity & Guaranty Co., 135 Tenn. 117, 185 S. W. 726.

The reason underlying the decisions of our courts that such a contract is one of insurance is clearly stated in 2 May on Insurance, § 540, p. 1268, wherein it is said: "The form of the contract is a policy describing the subject matter of the risk, setting forth the consideration and pledging the funds of the company to pay in cash if the event insured against happens, subject to the conditions of the contract. It is in these special conditions that the policy differs from an ordinary bond of indemnity with sureties given by a clerk, servant, or agent, to secure his employer. These conditions refer, as in other kinds of insurance, to the various circumstances which attend the contract, as the payment of premiums originally, and in case of renewal, the truth of the statements in the proposal or application, the limitation of risk assumed by the insurer, the notice of loss, mode of proof, terms of payment, and mode of adjustment, limitations of suits, etc., according to the special views and experience of the insurer, and with such modifications as the peculiarity of the risk assumed demands."

A bond of this nature comes strictly within the definition of fidelity insurance, as that term is generally defined, that is, where one, for a consideration, agrees to indemnify another against loss arising from the want of honesty, integrity, or fidelity, of employees and persons holding positions of trust. 1 Cooley's Briefs on Insurance, p. 17.

While the agreement in form made by the bank and the surety company resembles a contract of suretyship, it is, in substance and effect, a contract of insurance; hence the rules governing this form of insurance instead of those regarding contracts of suretyship are applicable.

The contract under consideration is in all things similar to that declared to be a contract of insurance in American Indemnity Co. v. W. C. Munn Co. (Tex. Civ. App.) 278 S. W. 957, in which a writ of error was denied by our Supreme Court. It is unlike that involved in Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S. W. 621, and Lonergan v. San Antonio Trust Co., 101 Tex. 77, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803. The contract construed by the Supreme Court in each of the above cases was a bond given by a surety company to the owner of property to secure the faithful performance of a building contract by a contractor. In these cases it was properly held that the rules governing contracts of suretyship were applicable.

The distinction between the rule announced in the latter cases, and that applicable here, is well stated by Mr. Cooley in his Briefs on Insurance, vol. 1, p. 16, wherein it is said: "The distinction between ordinary contracts of suretyship or guaranty, and contracts of guaranty insurance has not been very clearly drawn. It would seem, however, that one line of distinction is that in most ordinary contracts of guaranty the guarantor obligates himself to do the act if the principal fails, while in guaranty insurance the guarantor— that is the insurance company—agrees to indemnify the insured for any loss of money sustained due to the failure of the principal to act."

■ It is forcibly argued that this contract

is one of suretyship, because the employee whose fidelity was guaranteed joined in the execution of the bond as principal. We do not think this fact is conclusive of the nature of the contract. The evident purpose of having the employee to unite in the bond was to give consent to the terms thereof and to obtain his agreement to reimburse the bonding company in case of loss. The act of the surety company in inserting a clause in the bond obligating the employee to reimburse it for any loss sustained thereunder tends to support the view that the contract was not intended as one of suretyship, as under such a contract the liability of the principal to the surety would follow as a matter of law, in the absence of any express agreement.

When all the terms of the bond are considered, we think it fairly appears that the surety company, for a consideration, entered into a direct and primary obligation to indemnify the bank against any loss it might sustain under the conditions stated in the bond, independently of the action of the so-called principal; hence the trial court properly concluded that the contract was one of insurance to which the statutes as to suretyship have no application.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.