

ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

November 26, 2007

Mr. Timothy K. Irvine, Administrator
Texas Real Estate Commission
Post Office Box 12188
Austin, Texas 78711-2188

Opinion No. GA-0581

Re: Whether an applicant for a real estate inspector license is required to carry general liability insurance, professional liability insurance, or both (RQ-0591-GA)

Dear Mr. Irvine:

On behalf of the Texas Real Estate Commission (the "Commission"), your predecessor asked for an interpretation of certain provisions in Senate Bill 914 of the Eightieth Legislative Session, an act "relating to the continuation and functions of the Texas Real Estate Commission."[1] Act of May 21, 2007, 80th Leg., R.S., ch. 1411, 2007 Tex. Sess. Law Serv. 4825 (title). The Commission inquires about certain amendments to Occupations Code chapter 1102, which provides for licensing and regulating real estate inspectors. *See generally* TEX. OCC. CODE ANN. §§ 1102.001–.408 (Vernon 2004 & Supp. 2007). The amendments, found in sections 38 and 39 of Senate Bill 914 and effective on September 1, 2007, require applicants for a real estate inspector license or renewal of such license to obtain liability insurance coverage. *See* Act of May 21, 2007, 80th Leg., R.S., ch. 1411, §§ 38–39, 62, 2007 Tex. Sess. Law Serv. 4825, 4834–35, 4840 (codified at TEX. OCC. CODE ANN. §§ 1102.114, .203 (Vernon Supp. 2007)). By letter of August 21, 2007, the Commission supplemented its original request with another question about these provisions.[2]

Section 38 added subsection (3) to Occupations Code section 1102.114, which now reads as follows:

> The commission shall issue the appropriate license to an applicant who:
>
> (1) meets the required qualifications;

---

[1]Letter from Mr. Wayne Thorburn, Administrator, Texas Real Estate Commission, to Honorable Greg Abbott, Attorney General of Texas, at 1 (June 18, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Thorburn Letter].

[2]Letter from Ms. Loretta DeHay, Interim Administrator and General Counsel, to Honorable Greg Abbott, Attorney General of Texas, at 1–2 (Aug. 21, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter DeHay Letter].

(2)    pays the fee required by Section 1102.352(a); and

(3)    *offers proof that the applicant carries liability insurance with a minimum limit of $100,000 per occurrence to protect the public against a violation of Subchapter G.*

TEX. OCC. CODE ANN. § 1102.114(3) (Vernon Supp. 2007) (emphasis added). Section 39 amended Occupations Code section 1102.203(a) to require a licensee to provide "proof of liability insurance as required by Section 1102.114(3)" for license renewal. *Id.* § 1102.203(a).

Your predecessor asked whether sections 38 and 39 of Senate Bill 914 require an applicant for licensing as a real estate inspector to carry general liability insurance, professional liability insurance, or both. *See* Thorburn Letter, *supra* note 1, at 1. If the bill requires both general liability insurance and professional liability insurance, the Commission wishes to know how to interpret the $100,000 per occurrence requirement: whether the bill requires a minimum of $100,000 per occurrence for each type of insurance, or $100,000 combined coverage for both. *See id.* The Commission also asked whether sections 38 and 39 of Senate Bill 914 are unenforceable because they are contrary to public policy regarding insurance coverage for fraud, which is an intentional tort. *See* DeHay Letter, *supra* note 2, at 1; *see also Sanders v. City of Grapevine*, 218 S.W.3d 772, 779 (Tex. App.—Fort Worth 2007, pet. denied).

Sections 38 and 39 require the applicant to carry liability insurance to protect the public against a violation of subchapter G, which prohibits various kinds of conduct by a real estate inspector. *See* TEX. OCC. CODE ANN. § 1102.301–.305 (Vernon 2004) (subchapter G). First, "[a]n inspector may not perform a real estate inspection in a negligent or incompetent manner." *Id.* § 1102.301. In addition, an inspector may not accept an assignment for real estate inspection if the employment or the fee is contingent on reporting predetermined conditions or findings that he knows to be untrue, nor may he act in a dishonest, fraudulent, or deceitful manner. *See id.* § 1102.302. An inspector is also forbidden from acting in certain conflicting capacities and from performing repairs or maintenance "in connection with a real estate inspection under an earnest money contract, lease, or exchange of real property." *Id.* §§ 1102.303–.304. Finally, he may not violate chapter 1102 or a rule adopted by the Commission. *See id.* § 1102.305.[3]

A person acts in a negligent manner when he fails to exercise ordinary care under the circumstances or fails to act as an ordinarily prudent person would have acted. *See Henwood v. Gilliam*, 207 S.W.2d 904, 906 (Tex. Civ. App.—Dallas 1947, writ ref'd). A person acting in an incompetent manner acts as if he is unable or unqualified to do something. *See Tex. Cent. Ry. Co. v. Rowland*, 22 S.W. 134, 135 (Tex. Civ. App.—Fort Worth 1893, no writ) (railroad worker who was addicted to drink and was drunk at time of collision was incompetent), BLACK'S LAW DICTIONARY 768 (7th ed. 1999) (defining "incompetence"). A real estate inspector who performs an inspection in an incompetent manner may act negligently but does not act intentionally. *See Great Am. Ins. Co.*

---

[3]Section 1102.406 provides that a person commits a Class A misdemeanor if he "wilfully violates or fails to comply with this chapter or a commission order." TEX. OCC. CODE ANN. § 1102.406 (Vernon 2004).

*v. Langdeau*, 379 S.W.2d 62, 65 (Tex. 1964) (fidelity bond that indemnified against fraudulent and dishonest conduct required proof of intent to perform the wrongful act and did not protect against acts of negligence, carelessness, or incompetence). Performing an inspection in a negligent or incompetent manner would not necessarily constitute fraud or another intentional act. Whether a particular action is performed negligently, incompetently, or intentionally is a fact question.

Subchapter G also prohibits inspectors from engaging in certain intentional acts. *See* TEX. OCC. CODE ANN. § 1102.302 (Vernon 2004) (accepting fee contingent upon reporting findings known to be untrue). Public policy, however, prohibits a person from insuring against his own intentional misconduct. *See Decorative Ctr. v. Employers Cas. Co.*, 833 S.W.2d 257, 260 (Tex. App.—Corpus Christi 1992, writ denied) (public policy prohibits allowing an insured to benefit from his wrongdoing).

In light of this public policy, we consider whether sections 38 and 39 require an applicant for a real estate inspector license to have insurance coverage for intentional acts within subchapter G. Our objective in construing these provisions is to ascertain the Legislature's intent. *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We begin with the "plain and common meaning" of the statute's words, reading the statute as a whole and not just isolated portions. *See Tex. Natural Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 378 (Tex. 2005); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). If a statute is capable of two constructions, one of which sustains its validity, courts will give it the interpretation that sustains its validity. *See Reeves v. State*, 566 S.W.2d 630, 631 (Tex. Crim. App. 1978).

Sections 38 and 39 require a real estate inspector to show proof of "*liability insurance . . . to protect the public against a violation of Subchapter G.*" Act of May 21, 2007, 80th Leg., R.S., ch. 1411, §§ 38–39, 2007 Tex. Sess. Law Serv. 4825, 4834–35 (codified at TEX. OCC. CODE ANN. §§ 1102.114(c), .203(a) (Vernon Supp. 2007) (emphasis added)). The Texas Supreme Court has described a "liability insurance policy as 'an insurance policy designed to protect one from the consequences of one's own negligence.'" *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 327 (Tex. 1984) (quoting *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 763 (Tex. 1977) (construing aviation insurance policy)); *see also Highlands Ins. Co. v. Galveston*, 721 S.W.2d 469, 471 (Tex. App.—Houston [14th Dist] 1986, writ ref'd n.r.e.) ("Liability policies . . . insure against loss arising out of legal liability, usually based upon the assured's negligence."); *St. Paul Ins. Co. v. Bonded Realty, Inc.*, 578 S.W.2d 191, 192 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.) (errors and omissions insurance does not ordinarily cover dishonesty, intentional fraud, or criminal or malicious acts). Thus, the amendments adopted by sections 38 and 39 require insurance coverage for acts performed in a negligent or incompetent manner but not for intentional acts, such as fraud.

We now turn to your predecessor's first question: whether sections 38 and 39 of Senate Bill 914 require an applicant for licensing as a real estate inspector to carry general liability insurance, professional liability insurance, or both. *See* Thorburn Letter, *supra* note 1, at 1. "Professional liability insurance" is also known as "errors and omissions insurance." *See Venture Encoding Serv., Inc. v. Atlantic Mut. Ins. Co.*, 107 S.W.3d 729, 736 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 543 n.16 (5th Cir. 1992)). We will use the latter term in addressing this question.

Neither section 38 nor section 39 of Senate Bill 914 refers to a particular kind of liability insurance. *See* Act of May 21, 2007, 80th Leg., R.S., ch. 1411, §§ 38–39, 2007 Tex. Sess. Law Serv. 4825, 4834–35 (codified at TEX. OCC. CODE ANN. §§ 1102.114(c), .203(a) (Vernon Supp. 2007)). In contrast, certain other provisions of the Occupations Code specify the kind of insurance policy a licensee must have. *See* TEX. OCC. CODE ANN. §§ 1301.552 (Vernon 2004) (master plumber's certificate of insurance must provide for commercial general liability insurance for a claim for property damages or bodily injury); 1954.105(c)(4)(B) (applicant for licensure under Texas Asbestos Health Protection Act[4] as consultant, inspector or laboratory performing work for hire must have professional liability insurance coverage). While there are judicial decisions that identify policies as "general liability insurance" or "errors and omissions insurance," they do not answer this question because they use these terms in connection with a particular policy. *See Venture Encoding Serv., Inc.*, 107 S.W.3d at 736 ("[a]n errors-and-omissions policy is professional-liability insurance providing a specialized and limited type of coverage as compared to comprehensive insurance; it is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes and errors inherent in the practice of the professions" (quoting *Snug Harbor*, 968 F.2d at 543 n.16)); *City of Beaumont v. Ranger Ins. Co.*, 505 S.W.2d 934, 935 (Tex. Civ. App.—Beaumont 1974, writ ref'd n.r.e.) (policy with certain provisions was a general liability policy and not an indemnity policy). A California court noted that identifying a policy as a "general liability" policy provided relatively little information about its coverage: "Characterization of an insurance policy as a 'general liability' policy connotes neither unlimited coverage nor particular coverages. . . . It is invariably necessary to consult the language of any particular general liability policy to determine what coverages it affords." *FMC Corp. v. Plaisted & Co.*, 72 Cal. Rptr. 2d 467, 475 (Cal. App 1998).

Coverage under a particular insurance policy is to be determined from its terms, not from its title. *See Highlands Ins. Co.*, 721 S.W.2d at 471. "Insurance policies are contracts, and as such are subject to rules applicable to contracts generally." *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). You do not ask about a particular insurance policy and, in any case, the opinions of this office do not interpret contracts. *See* Tex. Att'y Gen. Op. No. GA-0321 (2005) at 7 n.5. We cannot determine as a matter of law whether sections 38 and 39 of Senate Bill 914 require real estate inspectors to have a "general liability policy" or an "errors or omissions policy."

Sections 38 and 39 of Senate Bill 914 do not indicate what kind of insurance policy will satisfy the licensing requirement, but they do refer to certain conduct prohibited by subsection G. Section 1102.301, provides that "[a]n inspector may not perform a real estate inspection in a negligent or incompetent manner." TEX. OCC. CODE ANN. § 1102.301 (Vernon 2004). In addition, section 1102.305, providing that "[a]n inspector may not violate this chapter or a rule adopted by the commission," may incorporate references to negligent or incompetent acts in chapter 1102 or the Commission rules pertaining to inspectors. *Id.* § 1102.305; *see* 22 TEX. ADMIN. CODE §§ 535.206–.231 (2007) (Tex. Real Estate Comm'n, Real Estate Inspectors). Thus, regardless of

---

[4]*See* TEX. OCC. CODE ANN. §§ 1954.001–.402 (Vernon 2004 & Supp. 2007).

what the insurance policy[5] is called, it must cover an inspector's performing a real estate inspection "in a negligent or incompetent manner" and his violation of any other provisions of chapter 1102 or Commission rules prohibiting negligent or incompetent acts by an inspector.[6] TEX. OCC. CODE ANN. §§ 1102.301, .305 (Vernon 2004).

Your predecessor also asked how to interpret the $100,000 per occurrence requirement if inspectors are required to have both general liability insurance and professional liability insurance; that is, whether the bill required a minimum of $100,000 per occurrence for each policy, or $100,000 combined coverage for both policies. *See* Thorburn Letter, *supra* note 1, at 1. Section 1102.114(c) requires real estate inspectors to "carry liability insurance with a minimum limit of $100,000 per *occurrence*," not per insurance policy. Act of May 21, 2007, 80th Leg., R.S., ch. 1411, § 38, 2007 Tex. Sess. Law Serv. 4825, 4834–35 (codified at TEX. OCC. CODE ANN. § 1102.114(c) (Vernon Supp. 2007) (emphasis added)). Thus, assuming that a real estate inspector has more than one policy applicable to the same occurrence, a combined coverage of $100,000 for that occurrence under the policies would comply with section 1102.114(c).

We have been informed that the Commission, at a meeting on June 4, 2007, issued an interim policy statement defining "liability insurance" in sections 38 and 39 to mean professional liability insurance, also known as errors and omissions insurance, until this office issues an opinion about the new requirements. *See* DeHay Letter, *supra* note 2, at 2. We reiterate that the insurance policy, regardless of its name, must provide coverage for non-intentional acts, particularly acts performed in a negligent or incompetent manner within chapter 1102, subchapter G.

---

[5] The insurance policy is subject to regulation and approval by the Texas Department of Insurance. *See* TEX. INS. CODE ANN. §§ 31.002, 37.001 (Vernon 2006).

[6] The Commission may find guidance for its decision about liability insurance coverage in actions it has taken in connection with negligent or incompetent conduct described in subsection G. The Commission may also find guidance in judicial orders about claims against the real estate inspection recovery fund, which is maintained "to reimburse aggrieved persons who suffer actual damages from an inspector's act in violation of Subchapter G." TEX. OCC. CODE ANN. § 1102.351 (Vernon 2004). Judicial orders for payment from the real estate recovery fund based on an inspector's negligence or incompetence under subchapter G should shed light on the acts covered by this provision.

## S U M M A R Y

The Eightieth Legislature amended Occupations Code sections 1102.114 and 1102.203 to require liability insurance coverage for persons applying for a real estate inspector's license or renewal of such license. The insurance must have a minimum limit of $100,000 per occurrence to protect the public against negligence or incompetence in violation of chapter 1102, subchapter G. The insurance requirement does not apply to intentional acts.

If a real estate inspector has more than one insurance policy applicable to the same occurrence, a combined coverage of $100,000 for that occurrence under all policies would comply with section 1102.114(c).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee